## DENSON *et al. vs.* McLEROY *et al.*

1. Equity will not decree the reformation of a deed of gift of a slave, so as to make it conform to the intentions of the donor, if it appear from the evidence that an unconditional parol gift had been made by the donor, to the donee, long anterior to the execution of the deed; that the property had been in the possession of the donee continuously, from the time of the parol gift, and that the donee had never accepted the deed sought to be reformed.

2. Verdict to reform a deed, and change the possession of property, conformably to such reformation, under such a state of facts, set aside and a new trial ordered.

In Equity, in Jasper Superior Court. Tried before Judge HARRIS, at the October Term, 1860.

William T. McLeroy, and his wife Mary E. McLeroy, formerly Mary E. Denson, and Sarah Frances Denson, Rebecca Denson, and Lou Ann Denson, exhibited their bill in equity, in the Superior Court of Jasper county, against James M Denson, Samuel Allen, Maxey, Jordan & Co., William Maxey & Co., Lynch & Davis, Davis & Walker, Fears & Swanson, and Presley E. Prichard, in which the following allegations are made, to wit:

That the female complainants are children of Elizabeth Denson, and James M. Denson; that Elizabeth Denson was the daughter of one Sarah Ledbetter; that the said Sarah Ledbetter, in the year 1844, was the owner of a negro girl slave by the name of Clara Ann, then about fifteen years of age, and desiring and purposing to make some provision for the comfort, support and maintenance of the said Elizabeth Denson during her natural life, and for her children living at her death, requested one Thomas Respass, to draft a deed of gift to the said Elizabeth Denson and her children in accordance with such desire and purpose; that by mistake, and from a want of skill and knowledge, in the legal import and meaning of words and terms, the said Thomas Respass, drew up a deed of gift, conveying said negro girl Clara Ann "to the said Elizabeth Denson, and the heirs of her body, their heirs and assigns, said negro not to be subject to the debts of the present, or any future husband of the said Elizabeth Denson," instead of conveying the said negro girl, together with her future increase "to the said Elizabeth

Denson, for, and during her natural life, remainder in *fee-simple* to such of her children as might be living at the time of her death," as was the intention, desire and purpose of all the parties to said deed of gift; that on the sixteenth day of November, 1844, the said Sarah Ledbetter executed and delivered the deed prepared as aforesaid, by the said Thomas Respass, believing, and intending, it to convey said negro and her increase according to the purpose and desire aforesaid; that under this impression and belief, the deed and negro were delivered to the said Elizabeth Denson, and her husband James E. Denson; that the said Elizabeth and James M., received said deed and negro with the same belief, intention and understanding, and held the same in accordance therewith; that the said Sarah Ledbetter died, believing the deed to be in accordance with her desire and purpose as hereinbefore expressed; that said negro girl is the mother of five children, to wit: Arthur, a boy, eight years old; Jane, a girl, six years old; Clark, a boy, four years old; Lucy Ann, a girl, two years old; and John, a child, one year old; that all of said negroes were in the possession of the said James M. Denson at the time of the death of his wife Elizabeth, which occurred on the ———— day of ———— 185—, and that the negroes remained in his possession until the 7th day of January, 1852, when they were levied on as the property of the said James M. Denson, under and by virtue of various Justices' Court *fi. fas;* two in favor of Lynch & Davis; two in favor of Davis & Walker; two in favor of Maxey, Jordan & Co.; one in favor of William Maxey & Co.; one in favor of Fears & Swanson, and one in favor of Presley E. Pritchard; that the complainants have interposed their claim to said negroes, which is now pending in Jasper Superior Court; that one John M. C. Denson, who has removed to parts unknown, and the female complainants, are all the children left living, at the time of the death of the said Elizabeth Denson, their mother.

Complainants, in and by their bill, pray that the defendants may answer the allegations and charges of the bill; that the sheriff and plaintiffs in *fi. fas.* may be enjoined from selling the negroes until this case is heard; that the deed of gift may be reformed so as to speak the intention, and carry out the purpose of the parties to it as charged in the bill; and that the complainants may have such other relief as they are entitled to under the facts of their case.

James M. Denson, filed his answer to the bill, in which all the charges and allegations of the bill are admitted, except those relating to the execution and delivery of the deed and negro, and the mistake in the deed, all of which he denies, and insists that at the time of the pretended execution of the deed of gift, the negro girl Clara was his own absolute property, and had been ever since the year 1833 or 1834, at which time the said Sarah Ledbetter, his mother-in-law, in consideration of his intermarriage with her daughter, the said Elizabeth, gave and delivered said negro girl to him, since which time he has held possession of her, claiming her as his own adversely to all the world, and has continually paid taxes for her; that he had no sort of connection or complicity with said deed of gift, and never recognized it in any shape whatever, but repudiated and denied any right of the said Sarah Ledbetter to change the title of said slave after having given her to him; that the children of Clara were born long after the gift of said Clara to him, and whilst she was in his peaceable, uninterrupted adverse possession; that when the said Sarah Ledbetter told the defendant of the deed of gift, he replied to her that it was not worth a piece of brown paper, because Clara was his property, and had been for several years previous; that after the gift of said negro to the defendant, the said Sarah Ledbetter did not pretend to assert any title thereto, but on the contrary recognized defendant's title, and often proposed to hire said negro from him; that said deed was never delivered to defendant or his wife, nor, so far as he knows to any one authorized to receive it for the grantees.

On the trial of the case in the Court below, the bill and answer were read, and the following evidence adduced, to-wit:

### Evidence for the Complainants.

The original deed of which the following is a copy:

GEORGIA—Putnam County:

Know all men by these presents, that I, Sarah Ledbetter, of the county and State aforesaid, do this day give unto my daughter, Elizabeth Denson, and the heirs of her body, by deed, a certain negro girl, about fifteen years old, by the name of Clara Ann, which negro is not to be subject to the debts or contracts of her present or future husband; which

negro I do forever warrant and defend the title to my daughter, Elizabeth Denson, and the heirs of her body, of the county and State aforesaid, their heirs and assigns, against myself, my heirs and assigns forever in *fee-simple.*

In testimony of which I have set my hand and seal, this the 16th of November, 1844.

Signed, sealed and delivered in the presence of Thomas Respass, Jos. R. Sanford.

[L. S.]            SARAH LEDBETTER.

This deed was proven and recorded on the 27th of November, 1844.

JOSEPH R. SANFORD testified: That he wrote the deed of gift at the request of Mrs. Ledbetter; her instructions were to so frame the deed as to convey the property to her daughter, Elizabeth Denson, during her lifetime, and at her death to go to her children surviving at her death; both witnesses and Mrs. Ledbetter thought, that the words used in the deed had the effect to give the negro and her increase, to Mrs. Denson during her lifetime, and at her death to her children that might then survive her; this was what Mrs. Ledbetter desired and intended; the deed was given to Thomas Respass to be recorded; witness does not remember hearing James M. Denson say anything about it, nor does he know in whose possession the negro had been previously; Mrs. Ledbetter lived in the upper, and Denson in the lower part of the county of Putnam; the witness knew the negro girl at the time the deed was recorded, she was then fourteen or fifteen years old, and without children; he has not known her since; Mrs. Denson is believed to be dead, but how long the witness does not know; Denson has married again.

On cross-examination he testified: The deed was written according to the witness' understanding of Mrs. Ledbetter's meaning at the time, and she was satisfied with it, as she believed it conveyed the property as she intended it; at the time the deed was made, Mrs. Ledbetter spoke of the negro girl as being at Denson's for the purpose of waiting on Mrs. Denson, who was a consumptive, and in low health; the witness never heard any one complain of the way the deed was written, and never heard Denson say anything on the subject.

THOMAS RESPASS testified: That he knew the defendants but not the plaintiffs; he witnessed the deed, but does not

recollect at whose instance; Mrs. Ledbetter said she wanted the negro secured to Mrs. Denson and her children; the witness understood Mrs. Ledbetter to say that she wanted Mrs. Denson to have a life-estate in the negro, and that after Mrs. Denson's death, she wanted the negro and her increase to go to Mrs. Denson's children, and that the negroes should not be subject to Denson's debts; Denson had the negro in possession when the deed was made, but what was the nature or duration of that possession, the witness does not know; the witness had the deed recorded, and then handed it to Denson, who did not question Mrs. Ledbetter's right, thus to dispose of the negro; Denson did not say anything about the deed after its execution; he does not know who had possession of the negro from 1832 to 1844, and never knew her until Denson came to live with witness in 1844; he does not know whether Denson was pleased with the deed or not, when witness offered it to him, he said that he would rather witness would keep it.

JAMES N. LYNCH testified: That he was acquainted with Mrs. Ledbetter and the negro girl Clara, but does not know in whose possession the negro had uniformly been previous to 1844, after that time she was in Denson's possession; the witness never heard either Denson or Mrs. Ledbetter say upon what terms Denson held the negro, or anything about the title or ownership of the negro. Clara has five children, the ages of which witness does not know, except that the oldest is about ten years of age; the negroes were carried from Denson's about twelve or fourteen months ago by the sheriff of Jasper county; witness was once in company with Denson, who had Clara's oldest boy with him, and Denson told witness that the boy belonged to his children, this occurred in the summer of 1855. The witness does not know whether Clara was born when Denson married or not, but is certain that she was not put in Denson's possession when he first married, but she has been in Denson's possession most of the time since 1844.

BARNWELL LEVERITT testified: That in 1855, when the negroes in dispute were levied on, James M. Denson claimed them, and as Denson and witness were members of the same church, and the general understanding in the neighborhood had been, that the negroes belonged to Denson's children, the witness remonstrated with Denson for claiming them and

acting so badly, to which Denson replied that he was claiming them not for himself, but for his children; witness then asked him if he did not know that if Mrs. Ledbetter could speak from the grave, she would say that she intended the property for Denson's wife and children, to which he, Denson, replied he believed she would; the witness supposed that the words "heirs of the body" meant children, and that Denson's reply, as he supposed, was with reference to the deed; the witnesses understanding that the negroes belonged to Denson's wife and children was derived from long intimacy with the family, and from hearing repeated conversations to that effect in the family, and from having never heard any adverse claim asserted by Denson.

## Evidence for the Defendants.

Mrs. MARY BADGER testified: That she knew Mrs. Ledbetter and her negroes, and has known Clara from her childhood. She also knew Denson, who married Elizabeth, the daughter of Mrs. Ledbetter, but she does not recollect the date of the marriage. She has seen Clara under Denson's control, but does not know at what date, or how she came there, except that she saw her going with Mrs. Denson. Mrs. Denson carried her behind her, on horseback. She has seen the negro at work with, and for Denson, and Denson was exercising acts of control and ownership over her. She does not know whether Denson bought Clara, or whether Mrs. Ledbetter gave her or loaned her to him; she heard Mrs. Ledbetter say that Mrs. Denson had done more hard work for her than any of her other girls, and that she intended to give her Clara. Mrs. Ledbetter afterwards told witness that she had given Clara to Mrs. Denson to nurse her baby. Mrs. Ledbetter had eight or ten negroes, and Denson had none at the time; she knows nothing of any deed of gift, and never heard Denson complain of any.

Upon this testimony, the jury returned a verdict in favor of the complainants, decreeing a reformation of the deed as prayed for in the bill, and a division of the negroes between the complainants by commissioners, in kind if it can be done equally, and if not then the negroes to be sold, and the proceeds divided.

Counsel for defendants then moved for a new trial of the case on the following grounds, to wit:

1. Because the verdict is unsupported by evidence.

2. Because the verdict is strongly and decidedly against the weight of the evidence.

3. Because the verdict is contrary to the charge of the Court.

4. Because the verdict is contrary to law.

5. Because the Court stated to the jury in the conclusion of its charge, that if the jury should believe it was the intention of Mrs. Ledbetter (as likely it was), to give the property to Mrs. Denson for life and remainder to her children, then they should find for the reformation of the deed.

6. Because the Court failed to give the whole law of the case to the jury in his charge.

The presiding judge overruled the motion, and refused the new trial; but ignores having used the words, "as likely it was," specified in the 5th ground of the motion.

The refusal to grant the new trial constitutes the error complained of.

WINGFIELD, LOFTON, HUDSON, JORDAN, for the plaintiffs in error.

BARTLETT, DAVIS & LAWSON, for defendants in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The error assigned in this case is, that the Court below refused to set aside the verdict and grant a new trial.

The motion for a new trial, was predicated upon several grounds, only two of which we deem it necessary to advert to, and these will be considered together, viz.: First, that the verdict is contrary to evidence, and secondly, that it is contrary to law.

The prayer of the bill is, that a deed, made by Mrs. Ledbetter, in the year 1844, conveying a certain female slave and her future increase, to Mrs. Denson (wife of the defendant) "and the heirs of her body, their heirs and assigns," may be so reformed, as to express the real intentions of the donor, viz.: to secure a life-estate to Mrs. Denson, with remainder to her children after her death. The first allegation in the bill (after stating the relations in which the complainants stand to Denson and wife, and to Mrs. Ledbetter) is, that in the year

1844, Mrs. Ledbetter (when the deed in question was made), *was the owner of the slave Clara*, the subject of the conveyance. Subsequently, it is alleged that Denson, the defendant, and his wife, received the deed, with the understanding that its purport was such as the complainants now seek to have engrafted on it, by decree in equity. These are important allegations, which must be established by proof to authorize such a decree.

The defendant, in his answer, positively denies both allegations. He states, that the slave Clara was given by Mrs. Ledbetter to his wife, and himself, unconditionally, in the year 1833, eleven years before the making of the deed, and had been ever since in his undisturbed possession. Further, he states that he was not present when the deed was made; nor did he know that the grantee contemplated making such a deed, nor did he receive it with the understanding that the donor's intention was as alleged, or with any other understanding; but refused to receive it at all. On each point he is sustained by one witness, and is contradicted by none.

It is true, some admissions of his, and one given in evidence militating against the idea of title in him at the time they were made, but they do not touch either the question of title in Mrs. Ledbetter, at the date of the deed, or its rejection by him.

It appears, then, that the title was out of Mrs. Ledbetter at the time she made the deed, and had long been so. Thus is the foundation of the complainants' claim for relief broken up. Equity will never busy itself with the reformation of a deed, after having ascertained that the grantor had no title whatever to the thing conveyed, and that his intentions regarding it were wholly immaterial. We think the Court below erred in refusing to set aside the verdict, and award a new trial, on the grounds that it was contrary to the evidence, and contrary to law.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.